# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## WESTERN DIVISION

QUINN S.,[1]

      Plaintiff,

vs.

FRANK BISIGNANO, Commissioner of
Social Security,

      Defendant.

No. 24-CV-3053-CJW-KEM

**ORDER**

_____

## *I.    INTRODUCTION*

The matter before the Court is a Report & Recommendation ("R&R") by the Honorable Kelly K. E. Mahoney, Chief United States Magistrate Judge, recommending the Court affirm the decision of the Administrative Law Judge ("ALJ") denying Quinn S.'s ("claimant") application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), Title 42, United States Code, Sections 401–34 and denying his application for supplemental security income ("SSI") under Title XVI of the Act, Sections 1381–85f. (Doc. 14). Claimant filed an objection. (Doc. 15). For the following reasons, the Court **overrules** claimant's objection, **adopts** Judge Mahoney's R&R, and **affirms** the ALJ's decision denying DIB and SSI.

## *II.    BACKGROUND, STANDARDS, AND THE ALJ'S FINDINGS*

The Court finds that Judge Mahoney accurately set out the background, disability determinations and burden of proof, the ALJ's findings, and the substantial evidence

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

standard, (Doc. 14, at 1–3), and claimant does not object to any portion of it. Thus, the Court adopts those portions of the R&R and incorporates them by reference without replicating them here.

The key background information as summarized by Judge Mahoney is that "[p]laintiff most recently filed for [DIB] and SSI benefits in November 2022, alleging disability since April 8, 2022, due to sleep disorders, mental health issues, foot and right shoulder pain, and narrowing and degeneration of his cervical spine." (*Id.*, at 1–2). "The ALJ issued a decision on January 26, 2024 . . . [finding] [p]laintiff not disabled from April 8, 2022 (the alleged onset date), through January 26, 2024 (the date of the decision)." (*Id.*, at 2–3). More specifically, although the ALJ found that "claimant has the following severe impairments: posttraumatic stress disorder; attention deficit hyperactivity disorder; cervical spine degenerative disc disease; obesity; major depressive disorder; and generalized anxiety disorder," the ALJ ultimately determined that "claimant can occasionally reach overhead with the left upper extremity" and "is limited to simple, routine, repetitive work with no supervisory duties." (Doc. 7-2, at 16, 19).

### III.   STANDARD OF REVIEW OF AN R&R

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a clearly erroneous standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). A district judge may, however, elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).

### IV.    THE R&R

In his brief before Judge Mahoney, claimant argued that the ALJ (1) "committed an SSR 00-4p error[2] in relying on vocational expert [("VE")] testimony that did not properly explain why the [VE] identified other work despite the conflict with the Dictionary of Occupational Titles [("DOT")]", (2) "did not articulate sufficient reasons for finding [claimant's] psychiatric medication manager's[3] opinion not persuasive," and (3) "did not provide good reasons for finding [claimant] not credible in reporting his limitations." (Doc. 9, at 2). Claimant asserts that those "errors, individually or taken

---

[2] Referring to SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

[3] Referring to Abbie White, ARNP. (Doc. 9, at 6).

together, require this Court to reverse the ALJ's denial of benefits and remand [claimant]'s claim." (*Id.*).

The Commissioner of Social Security ("Commissioner") responded, first, that the ALJ "provided a reasonable explanation for how he resolved the possible conflict between the [VE's] testimony and the DOT." (Doc. 10, at 7). The Commissioner also argued, second, that "the ALJ properly applied the regulatory framework of 20 C.F.R. §§ 404.1520c and 416.920c to find Ms. White's opinion not persuasive." (*Id.*, at 9). More specifically, the Commissioner argued that "[t]he ALJ found the opinion was neither supported nor consistent with the material medical evidence, citing multiple medical reports from both Ms. White and other medical sources to support his findings[.]" (*Id.*, at 10). Last, the Commissioner responds that "the ALJ properly considered and discussed Plaintiff's subjective complaints" because "[w]hile the ALJ must consider all the factors relevant to subjective complaints, he need not include a discussion of each and every factor." (*Id.*, at 13).

In her R&R, Judge Mahoney recommended "affirming the ALJ's decision not to fully credit [p]laintiff's subjective complaints of his limitations," "affirming the ALJ's evaluation of [advanced registered nurse practitioner ("NP")] White's medical opinion," and "finding the ALJ properly resolved the conflict between the DOT and the VE's testimony." (Doc. 14, at 7, 10, 14). Judge Mahoney based these recommendations on her determinations that, first, "[t]he ALJ provided good reasons for [his] evaluation of [p]laintiff's subjective complaints [and] [s]ubstantial evidence supports the ALJ's reasoning." (*Id.*, at 6). Second, Judge Mahoney found the ALJ "addressed both supportability and consistency and cited specific records" in determining his evaluation of NP White's medical opinion. (*Id.*, at 10). Lastly, Judge Mahoney determined that "the ALJ sufficiently addressed the conflict as to whether [p]laintiff could perform jobs

requiring frequent reaching with the limitation included in the [residual functioning capacity ("RFC")]." (*Id.*, at 14).

## V. DISCUSSION

Claimant now asserts that Judge Mahoney committed reversible error in her handling of his three arguments by (1) rectifying an alleged conflict between the DOT and the VE in the manner that she did, (2) "failing to analyze the supporting explanations" by the NP, and (3) failing to provide good reasons for finding claimant not credible in reporting his limitations. (Doc. 15, at 2, 4, 6). Embedded within this last argument are two specific claimed errors: Judge Mahoney's "conclusion that [claimant]'s argument amounts to arguing for the [C]ourt to reweigh the evidence on [claimant]'s abilities" and "finding the ALJ could exclude from the hearing decision any discussion of [claimant]'s headaches and limitations." (*Id.*, at 6). The Court considers each de novo and in turn, taking them in the order that Judge Mahoney did, thus in reverse order from claimant.

### A. Claimant's Subjective Complaints

In determining whether to accept a claimant's subjective complaints, an ALJ must consider "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir.2010).

Here, the ALJ explicitly listed the *Polaski* factors in his decision. (Doc. 7-2, at 20). The ALJ also summarized claimant's testimony that claimant "has trauma related posttraumatic stress disorder, neck and back pain, headaches, mood swings, difficulty concentrating and focusing, loss of interest, low motivation, and impulsivity." (*Id.*). At the same time, the ALJ highlighted that claimant's "consultative psychological exam

5

noted the claimant is inclined to deprecate or devalue himself by presenting more troublesome emotional and personal difficulties than are likely (aka "faking bad")." (*Id.*). More specifically, the ALJ found contradictions within claimant's subjective complaints, for instance, regarding cervical spine degenerative disc disease:

> The claimant's description of his activities of daily living, such as driving, caring for his daughter, manag[ing] finances without assistance, and having adequate independent functioning, are not consistent with his allegations regarding the severity of his mental symptoms. This evidence is not consistent with the claimant's allegations regarding the work related limitations imposed by his mental impairments.

(*Id.*). The same was true for obesity, according to the ALJ, who found that "[t]he evidence of record is not consistent with the claimant's allegations regarding the severity of his work related limitations from obesity." (*Id.*, at 22). In sum, the ALJ found that "[t]he objective evidence of record is not consistent with claimant's allegations regarding the physical or mental limitations on his ability to work. This evidence persuades the undersigned that claimant's testimony is not entirely consistent with the medical evidence and other evidence in the record." (*Id.*). That objective evidence of record included claimant's prior work history. (*Id.*). It also included "no indication in the evidence of record that claimant's medications were not efficacious when taken as prescribed." (*Id.*).

In reviewing the ALJ's determination on claimant's subjective complaints, Judge Mahoney found that "[t]he ALJ provided good reasons for the ALJ's evaluation of Plaintiff's subjective complaints. Substantial evidence supports the ALJ's reasoning." (Doc. 14, at 6).

The Court also finds, on its de novo review, that the ALJ provided good reasons for discrediting claimant's subjective complaints. The ALJ detailed that claimant's statements on what he was capable of doing physically did not match the severity of his alleged mental symptoms. In other words, the ALJ considered claimant's prior work history; daily activities; duration, frequency, and intensity of pain; effectiveness of

medications; and functional restrictions.  The ALJ, in that way, did not conduct an improper analysis, but simply reached a conclusion that claimant disagrees with: the ALJ did not credit claimant's subjective complaints because they contradicted other evidence in the record that the ALJ did credit.  It does not matter whether another ALJ could reach a different conclusion; rather, the question here is whether substantial evidence supported this ALJ's decision.  It did.

The Court also finds that the ALJ acknowledged that claimant stated that he had headaches, but that the ALJ did not point to any additional evidence on headaches in the record apart from claimant's own statements.  The ALJ did state, however, that "[t]here was no indication in the evidence of record that claimant's medications were not efficacious when taken as prescribed."  (Doc. 7-2, at 22).  It was claimant's burden to put evidence of headaches apart from his own testimony in the record.  *See Collins ex. rel. Williams v. Barnhart*, 335 F.3d 726, 729–730 (8th Cir. 2003) ("impairments that are controllable by medication do not support a finding of total disability"); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) ("The ultimate burden of persuasion to prove disability, however, always remains with the claimant."); SSR 19-4P, 2019 WL 4169635, at *2 (Aug. 26, 2019) ("We also will not make a finding of disability based on a person's statement of symptoms alone").  It was also claimant's burden to put evidence of medications not managing the headaches in the record.  The Court finds the ALJ's handling of the headache claim is no basis for error and the Court defers to the ALJ's determination on what weight to assign the evidence that was in the record.  Thus, the Court overrules claimant's objection on this first issue.

### B.    *Medical Opinion Evidence*

Under the regulations, an ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the

7

source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). Likewise, an ALJ's failure to specifically address the consistency and supportability of any medical opinion is reversible error. *See Bonnett v. Kijakazi*, 859 Fed. App'x 19, 20 (8th Cir. 2021).

An ALJ is not, however, required to specifically to address each statement made or limitations referenced in an opinion. *See McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (stating that an ALJ is not required to "mechanically list and reject every possible limitation"); *accord Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) ("The interpretation of physicians' findings is a factual matter left to the ALJ's authority."). Rather, "the ALJ is free to accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022). At the same time, an ALJ may not "play doctor" by making their own medical determinations on how symptoms should manifest or what diagnoses signify. *Pate–Fires v. Astrue*, 564 F.3d 935, 946–47 (8th Cir. 2009). Put another way, "an ALJ must not substitute his opinions for those of the physician." *Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008).

Here, claimant is not arguing that Judge Mahoney failed to review whether the ALJ addressed both consistency and supportability in reviewing NP White's testimony. Claimant is also not arguing that the ALJ substituted his opinion for that of NP White or played doctor. Instead, claimant argues that Judge Mahoney should have found error with the ALJ not explaining why he discounted NP White's opinion after evaluating it for supportability and consistency, arguing "[b]oth the supportability and the consistency factor require sufficient articulation as to how they are considered to provide meaningful review. (Doc. 15, at 4). On this issue, the ALJ wrote that NP White "noted multiple areas of an inability to meet competitive standard or no useful ability to function in abilities and aptitude needed to do unskilled, semiskilled and skilled work." (Doc. 7-2,

8

at 24). At the same time, the ALJ found NP White's opinion not persuasive because it was "not consistent with the material medical evidence in the file and notes from treating and examining medical professionals of record," specifically, "the evidence of record which reveals the claimant had minimal and infrequent signs and findings associated with a mental impairment and multiple unremarkable psychiatric and mental status examinations." (*Id.*).

As a preliminary matter, the Court "rejects [claimant's] suggestion that a magistrate judge must expressly address every aspect of every argument raised by counsel, or every facet of an opinion drafted by the ALJ in order for their analysis to be correct." *Jennifer C.L. v. O'Malley*, No. 22-cv-3135 (KMM/DLM), 2024 WL 1209217, at *2 (D. Minn. Mar. 21, 2024). Likewise, the Court rejects claimant's attempt at requiring this Court to give different weight to the evidence than the ALJ did. *See Cropper v. Dudek*, 136 F.4th 809, 814 (8th Cir. 2025) ("We agree with the Commissioner that this argument is fundamentally inconsistent with our statutorily mandated substantial evidence standard of review -- it invites us to reweigh the evidence of record regarding the supportability and consistency factors, rather than uphold the ALJ's finding that the medical opinions are not persuasive unless that finding 'falls outside the available zone of choice.'").

Thus, in reviewing this issue de novo, the Court concludes that the ALJ properly reviewed NP White's opinion for both consistency and supportability. The ALJ compared the opinion with the other medical evidence in the record and determined whether it was consistent with and supported by that evidence, as he is required to. Here, again, the Court finds claimant's issue really is that the ALJ credited testimony that supported a finding that claimant was not disabled. But because the ALJ considered the factors that he was required to in reaching that conclusion, that the ALJ found against claimant does not demonstrate improper consideration. *See Austin*, 52 F.4th at 729

(finding that an ALJ that considered consistency and supportability but ultimately found a medical provider's opinion unpersuasive did not err because the ALJ analyzed the required factors).  None of the district court cases cited by claimant to prove the opposite are from districts within the Eighth Circuit; rather, they are not controlling, and the Court finds them unpersuasive.  The Court overrules claimant's objection as to this second issue as well.

### C.      *Vocational Expert versus Dictionary of Occupational Titles*

"[W]hen VE testimony conflicts with the DOT, the DOT controls if its classifications are unrebutted." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 (8th Cir. 2014).  Given that rule, "the ALJ has an affirmative responsibility to ask about 'any possible conflict' between VE evidence and the DOT, and its companion publication (the SCO), on the requirements of a job or occupation before relying on VE evidence to support a determination of not disabled." *Id.*, at 633 (citing SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000); *Moore v. Colvin*, 769 F.3d 987, 989 (8th Cir. 2014) ("Under Social Security Ruling (SSR) 00–4p, the ALJ must ask about any possible conflict between VE evidence and information provided in the DOT.").

If there is an unexplained conflict between VE testimony and the DOT, "the VE's testimony does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform." *Kemp*, 743 F.3d at 632.  At the same time, "[t]he DOT classifications may be rebutted with VE testimony which demonstrates specific jobs whether classified as light or sedentary, may be ones that a claimant can perform." *Dobbins v. Barnhart*, 182 Fed.Appx. 618, 619 (8th Cir.2006); *accord Jones v. Astrue*, 619 F.3d 963, 978 (8th Cir. 2010) (finding that when the VE specifically limited his opinion, "his testimony was a perfectly acceptable basis for the administrative law judge's conclusions"); *Moore*, 796

F.3d at 989 ("A VE must offer an explanation for any inconsistencies between her testimony and the DOT, which the ALJ may accept as reasonable after evaluation.").

> An expert generally seeks to resolve such a discrepancy by specifying that he has limited his testimony to only those jobs within the DOT description that someone with the relevant RFC can perform and, in more recent years under the Commissioner's policy on apparent unresolved conflicts, by explaining the basis of his opinion that jobs within that narrower subset exist in significant number.

*Thomas v. Berryhill*, 881 F.3d 672, 677-78 (8th Cir. 2018).

Here, claimant argues, "the ALJ could not rely on the VE's general experience and education to resolve apparent conflicts with the" DOT. (Doc. 15, at 2). In his written ruling, the ALJ handled the conflict in this way:

> In order to determine the impact of the claimant's [RFC] on his ability to perform past relevant work, the [VE] was asked a hypothetical question approximating the claimant's situation as exactly as possible, including the [RFC] as set forth above. The [VE] testified that, based upon the claimant's [RFC], he could not perform past relevant work. Accordingly, the undersigned finds the claimant is unable to perform past relevant work as actually or generally performed.

(Doc. 7-2, at 25). In addition, the ALJ wrote that "the [VE's] testimony is consistent with the information contained in the [DOT] and Selected Characteristics of Occupations [("SCO")] and supplemented by her education, training and personal experience." (*Id.*). Regarding claimant's ability to reach with his left arm, "[t]he [VE] noted the limitations on reaching . . . are not contained in the [DOT] and [SCO]. The [VE] testified, that based upon her education, training and personal experience, the claimant would be able to perform the representative light unskilled occupations within the [RFC] described above." (*Id.*, at 26).

Here, the Court finds despite claimant's argument to the contrary, there was no conflict between the DOT and the VE identified by the VE or the ALJ. The VE stated,

> I should say the DOT and the supplements don't specifically address certain things. And when they aren't specifically addressed, I am basing my answered on my work history and education in the field of vocational rehabilitation counseling. For example, the reaching isn't defined as far as with which upper extremity or with which – in which direction.

(Doc. 7-2, at 59). The ALJ interpreted that statement, reasonably, to mean that "the limitations on reaching . . . are not contained in the [DOT.]" (*Id.*, at 26). For that reason, the ALJ did not need to resolve any conflict, as the only evidence on the issue of reaching came from the VE. *See Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 519 (8th Cir. 2019) ("Because the ALJ described [claimant's] limitations to the VE, the VE responded with possible jobs, and the VE's testimony did not conflict with the DOT, the ALJ was entitled to rely upon her testimony." (cleaned up)); *Lori A.H. v. Bisignano*, No. 24-cv-2262 (JMB/JFD), 2025 WL 2374304, at *5 (D. Minn. July 23, 2025) ("A reasonable explanation includes, for example: (1) when evidence from the VE includes information that is not included in the DOT, such as information from the VE's experience[.]").

The case that claimant relies on to assert error in his objection on this issue requires a conflict between the VE and the DOT as a preliminary step. *See* (Doc. 15, at 3 (citing *Smith v. Kijakazi*, No. 3:21-cv-00201 PSH, 2022 WL 17361453, at *2 (E.D. Ark. Dec. 1, 2022) ("The parties correctly identified the duty of the ALJ, under Social Security Ruling 00-4p, to obtain an explanation from the [VE] when there is a possible conflict between the expert's testimony and the DOT."). Likewise, the case previously relied on by claimant in his briefing before Judge Mahoney required the same. *See* (Doc. 9, at 14 (citing *Alberda v. Comm'r of Soc. Sec. Admin.*, No. 3:20-CV-00283-JTK, 2021 WL 4239500, at *3 (E.D. Ark. Sept. 17, 2021) ("This Court has carefully examined exactly how much detail or support a VE must provide when he knows there is a conflict between his testimony and the [DOT]."); *accord* (Doc. 14, at 12 ns. 35 & 36 (collecting cases on

12

resolving conflicts between a VE and the DOT)).  Here, there was simply no conflict to resolve, and thus also no error.  However, even if there were a conflict, the Court finds, like Judge Mahoney, that the ALJ appropriately evaluated the VE's testimony to find that claimant could perform some other work that exists in significant numbers in the national economy.  It seems to the Court that, again, claimant's real argument is that the ALJ, after following the required procedure, credited evidence that pointed towards a finding that he is not disabled.  Therefore, the Court also overrules claimant's objection on this final issue.

## VI.    CONCLUSION

For these reasons:

1.     Claimant's objection (Doc. 15) to the R&R (Doc. 14) is **overruled**.

2.     The Court **accepts** the R&R (Doc. 14) without modification.  *See* 28 U.S.C. § 636(b)(1).

3.     Following Judge Mahoney's recommendation:

   a.     The ALJ's decision denying claimant's application for DIB is **affirmed**;

   b.     The ALJ's decision denying claimant's application for SSI is **affirmed**; and

   b.     Judgment will enter against claimant and in favor of the Commissioner.

**IT IS SO ORDERED** this 20th day of March, 2026.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa